## GILES *versus* VIGOREUX.

The hirer of a vessel on shares, while using and controlling her under the contract, is to be considered the owner, acting for himself, in procuring seamen and supplies.

The enrollment or registry of a vessel is not conclusive evidence against the general owner in a suit against him for sailor's wages.

No promise, upon which a sailor can maintain suit for wages, is deducible from his right to collect them by process *in rem.*

Against the general owner of a vessel chartered upon shares, no action for wages can be maintained by a sailor, who was employed by the hirer, while using and controlling the vessel under the charter-party.

On Facts Agreed.

Assumpsit, for the plaintiff's wages as a sailor on board the schooner Mary.

The defendant owned the schooner, and let her to one Partridge the master, upon a contract that Partridge was to have the use and control of her; to victual and man her at his own expense ; to employ her as he should choose ; and to pay the plaintiff one half her earnings, deducting half of port charges. Under that contract Partridge controlled the vessel, using her for coasting purposes, and hired the plaintiff as a sailor on a trip from Gardiner to Boston.   The trip was made and freight was earned.   It did not appear that the hiring of the plaintiff was known to the defendant.   Upon these facts, the case was submitted to the Court for a legal decision.

*Whitmore,* for the plaintiff, cited *Scolfield* v. *Potter,* Davies' R. 392.

*Danforth & Woods,* for the defendant.

Wells, J. — During the time the services were performed by the plaintiff, the schooner was let by the defendant to the master, Welcome Partridge, who was to victual and man her at his own expense, was to have and did have the use and control of her, to employ her as he should choose, and to pay the owner one half her earnings, deducting one half of the port charges.   The plaintiff was employed by Partridge.

The law appears to be well settled by numerous decisions,

Giles *v.* Vigoreux.

that the general owner of a vessel is not liable for shipments, or for supplies obtained by the master, who has the control of a vessel under a contract like that made in the present case. *Thompson* v. *Snow,* 4 Greenl. 264 ; *Emery* v. *Hersey,* Ib. 407 ; *Winsor* v. *Cutts,* 7 Greenl. 261 ; *Cutler* v. *Thurlo,* 20 Maine, 213 ; *Sproat* v. *Donnell,* 26 Maine, 185 ; *Thompson* v. *Hamilton,* 12 Pick. 425 ; *Webb* v. *Pierce,* 15 L. R. 9.

These cases were decided upon the ground, that the hirer is the owner of the vessel for the time in which he exercises control over her under the contract, and that he acts for himself in making contracts of shipment and for supplies, and not as agent of the general owners.

The same principle must apply to seamen's wages. They contract with the owner *pro hac vice,* while the general owner has made no contract with them. *Aspinwall, Adm'r* v. *Bartlett,* 8 Mass. 483 ; *Goodridge* v. *Lord,* 10 Mass. 483. The hirer in such case being regarded as the owner, and having the benefit of the services, no implied assumpsit can arise against the person, who has let to him the vessel. Where there are several owners of a vessel, they are tenants in common, and are generally to be regarded in the same manner as tenants in common of other chattels. And the enrollment or registry does not make the owner any more liable for seamen's wages when the vessel is let on shares, than the landlord of a house would be for the wages of the servants employed by the tenant. Notwithstanding the general owner has parted with the control of the vessel, the seamen would have a remedy against it by a process *in rem,* for they have in ordinary cases a threefold remedy, against the ship, the owners and the master. *Abbott on Shipping,* 475. By arresting the vessel, the general owners may be made indirectly liable for seamen's wages. But this claim upon the vessel arises from the nature of their employment, and is to be pursued in a court of admiralty. It is a proceeding authorized by the marine law, and also by the Act of Congress of 1790, c. 56, § 6. As the vessel has been brought safely into port by their exertions, it should be a security for their compensation. But the existence

of such claim lays no foundation for a right of action *ex contractu* against an owner, who has parted with the control of his vessel by letting it to another, as was done by the defendant.

In the case of *Scolfield* v. *Potter et al.* Davies' R. 392, there was a special promise made by the owners to the plaintiff to pay the order drawn on them in his favor by the master when it was presented, and the freight earned on the cargo brought home was collected by one of the owners, and retained in their hands. These facts might warrant the decision in favor of the plaintiff, although the vessel was let to the master on shares.

According to the agreement of the parties a nonsuit must be entered.

SHEPLEY, C. J., and HOWARD, RICE and HATHAWAY, J. J., concurred.